UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ONE40 BEAUTY LOUNGE LLC, individually and on behalf of all others similarly situated, *Plaintiff*, | ) ) ) ) ) | 3:20-CV-00643 (KAD) |
| v. | ) ) | |
| SENTINEL INSURANCE COMPANY, LTD., *Defendant*. | ) ) ) | NOVEMBER 9, 2021 |

**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (ECF NO. 42)**

Kari A. Dooley, United States District Judge

Plaintiff One40 Beauty Lounge, LLC filed this putative class action against Defendant Sentinel Insurance Company, Ltd. seeking coverage for losses it sustained as a result of the COVID-19 pandemic, and the shutdown of its business occasioned thereby, pursuant to the terms of a Policy issued to it by Defendant. Pending before the Court is Defendant's Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Therein, Defendant asserts that the Policy does not provide coverage for Plaintiff's losses because the Policy contains an applicable "Virus Exclusion." Plaintiff argues that the Virus Exclusion is ambiguous, but that even if it unambiguously excludes coverage, the Policy still provides coverage for thirty days of losses. Oral argument was held on August 5, 2021. For the reasons that follow, the motion is granted.

**Standard of Review**

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Pleadings" include both the "complaint" and the "answer to [the] complaint." Fed. R. Civ. P. 7(a). "On a

motion for judgment on the pleadings, courts may consider all documents that qualify as part of the non-movant's 'pleading,' including (1) the complaint or answer, (2) documents attached to the pleading, (3) documents incorporated by reference in or integral to the pleading, and (4) matters of which the court may take judicial notice." *Lively v. WAFRA Inv. Advisory Grp., Inc*., 6 F.4th 293, 306 (2d Cir. 2021).

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim. . . . To survive a Rule 12(c) motion, [the plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief . . . calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal conduct. . . . In making this assessment, we draw all reasonable inferences in [the plaintiff's] favor. . . . Until both parties have an opportunity to test their evidence at summary judgment or trial, we must accept the [plaintiff's] pleading as true and decline to weigh competing allegations asserted by the moving party. . . .

"[J]udgment on the pleadings is not appropriate if there are issues of fact which if proved would defeat recovery, even if the trial court is convinced that the party opposing the motion is unlikely to prevail at trial. . . . Thus, where a question [of fact] is in dispute, it [is] improper for the district court to answer it on a motion for dismissal on the pleadings. . . . [*See*] 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1367 (3d ed. 2021) ('[J]udgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court.'). Thus, a court may consider undisputed allegations of fact on a Rule 12(c) motion under the same standard as Rule 12(b)(6), but it may not use a motion for judgment on the pleadings to

2

weigh disputed factual allegations." *Lively*, 6 F.4th at 301–02 (citations and internal quotation marks omitted). "On a Rule 12(c) motion, the court's task is to assess the legal feasibility of the complaint." *Id.* at 304 (internal quotation mark omitted).

**Discussion**

The efforts to diminish or curtail the lethal and widespread impact of COVID-19 on people across the country caused many businesses to close their doors resulting in significant and sometimes devastating lost revenues. And across the country, those businesses turned to their insurers for coverage for the losses caused by the forced closures. Where coverage has been denied, litigation has ensued.

Here, Plaintiff is one of the many businesses forced to close its doors due to the COVID-19 pandemic. Plaintiff insured against certain losses to its business with a Policy issued by Defendant. Whether that Policy provides coverage as claimed is decided herein.

It is well-settled that an insurance policy is construed in accordance with general contract interpretation principles.[1] *Lexington Ins. Co. v. Lexington Healthcare Grp., Inc*., 311 Conn. 29, 37, 84 A.3d 1167, 1173 (2014). "In accordance with those principles, [t]he determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . . Under those circumstances, the policy is to be given effect according to its terms. . . . When interpreting [an insurance policy],

---

[1] The Court recognizes that the parties disagree as to the applicable law. Defendant asserts that Nevada law applies while Plaintiff asserts that Connecticut law applies. However, Defendant agrees that the choice of law is not outcome determinative and no choice of law analysis is therefore required. *See Lumbermens Mut. Cas. Co. v. Dillon Co*., 9 F. App'x 81, 83 (2d Cir. 2001) ("The threshold choice of law question . . . is whether there is an outcome determinative conflict between the applicable laws of the states with a potential interest in the case. If not, there is no need to perform a choice of law analysis, and the law common to the jurisdictions should be applied.").

3

we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result. . . .

"In determining whether the terms of an insurance policy are clear and unambiguous, [a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading. . . . Under those circumstances, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy." *Lexington Ins. Co.*, 311 Conn. at 37–38.

The Policy at issue includes a Virus Exclusion that provides that Defendant "will not pay for loss or damage caused directly or indirectly by . . . [the] [p]resence, growth, proliferation, spread or any activity of 'fungi', wet rot, dry rot, bacteria or virus." ECF No. 42-3 at 126. Defendant argues that this exclusion is unambiguous and precludes coverage for losses occasioned by the COVID-19 virus. Plaintiff asserts that this provision is ambiguous for a number of reasons and that judgment on the pleadings is not warranted. The Court does not write on a blank slate. Indeed, numerous courts have examined identical policy provisions and determined that the Virus Exclusion is unambiguous and applies to claims arising out of losses caused by the COVID-19 virus. *See, e.g., Cosmetic Laser, Inc. v. Twin City Fire Ins. Co.*, No. 3:20-cv-00638-SRU (D. Conn. Aug. 11, 2021), ECF No. 59 at 17–19 (finding identical Virus Exclusion unambiguous and rejecting argument that canons of construction are necessary to determine scope of exclusion, though noting that even if canons applied, those argued by Plaintiff do not change outcome).[2] *See*

---

[2] In a thorough, reasoned and persuasive analysis, Judge Underhill rejected the arguments advanced by Plaintiff here.

*also Little Stars, LLC d/b/a The Little Gym of Gilbert v. Sentinel Ins. Co., Ltd.*, No. 3:20-cv-00609-AVC (D. Conn. Aug. 12, 2021), ECF No. 38 at 10–11 (concluding that identical Virus Exclusion is unambiguous and precludes coverage for losses caused by COVID-19 virus); *CFIT Holding Corp. v. Twin City Fire Ins. Co.*, No. 20 C 3453, 2021 WL 2853376, at *5 (N.D. Ill. July 8, 2021) (same); *Kirkland Grp., Inc. v. Sentinel Ins. Co., Ltd.*, No. 3:20-cv-496-DPJ-FKB, 2021 WL 2772561, at *2 (S.D. Miss. June 29, 2021) (same); *Arrowhead Health & Racquet Club, LLC v. Twin City Fire Ins. Co.*, No. 1:20-cv-08968-NLH-KMW, 2021 WL 2525739, at *5 (D.N.J. June 21, 2021) (same); *Garces v. Sentinel Ins. Co., Ltd.*, No. 5:21-cv-00189-JWH-SPX, 2021 WL 2010357, at *3 (C.D. Cal. May 18, 2021) (same); *Coffey & McKenzie, LLC v. Twin City Fire Ins. Co.*, No. 2:20-cv-01671-BHH, 2021 WL 1310872, at *3 (D.S.C. Apr. 8, 2021) (same). Applying the principles of contract construction set forth above, the Court finds the reasoning and analysis in these cases persuasive and sees no useful purpose in repeating the analysis here. The Virus Exclusion in Plaintiff's Policy is unambiguous and, by its plain meaning, applies to claims made for losses caused by the COVID-19 virus.

Notwithstanding, Plaintiff argues that the Policy provision located at Subsection B.1.f of a section for "Limited Coverage for 'Fungi', Wet Rot, Dry Rot, Bacteria and Virus" (limited coverage provisions) provides limited coverage for thirty days of losses, even if the Virus Exclusion applies. Section B.1 reads as follows:

1. Limited coverage for "Fungi", Wet Rot, Dry Rot, Bacteria and Virus

    a. The coverage described in **1.b** below only applies when the . . . virus is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

    (1) A "specified cause of loss" other than fire or lightning;

5

> > (2) Equipment Breakdown Accident occurs to Equipment Breakdown Property, if Equipment Breakdown applies to the affected premises.
>
> b. We will pay for loss or damage by . . . virus.[3]

ECF No. 42-3 at 127. Preliminarily, by the plain and unambiguous terms of the Policy, limited coverage under Subsection B.1.b is only available if the losses are the result of the events listed in Subsection B.1.a. *See Cosmetic Laser, Inc.*, No. 3:20-cv-00638-SRU, ECF. No. 59 at 5 (analyzing identical limited coverage provisions). Finally, Subsection B.1.f—the last of the subsections under the limited coverage provisions—provides in pertinent part:

> f. The following applies only if a Time Element Coverage applies to the "scheduled premises" and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Time Element Coverage.
>
> > (1) If the loss which resulted in . . . virus does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by . . . virus, then our payment under the Time Element Coverage is limited to the amount of loss and expense sustained in a period of not more than 30 days unless another number of days is indicated in the Declarations. . . .

ECF No. 42-3 at 127–28.

Plaintiff argues that Subsection B.1.f provides standalone "Time Element Coverage" for thirty days of losses caused by a virus. Defendant argues that Section B.1.f must be read together with the other subsections of Section B.1 and that it does not provide separate standalone coverage for thirty days of losses caused by a virus. Again, the courts that have been asked to consider this very issue, consistently find that Defendant is correct. As held by Judge Underhill:

> The "Time Element Coverage" granted by the Policy in Subsection B.1.f does not somehow create an exception to the Virus Exclusion in this instance. [The argument to the contrary] takes Subsection B.1.f entirely out of context and violates basic principles of contract interpretation. *See Afkari-Ahmadi v. Fotovat-Ahmadi*, 294 Conn. 384, 391 (2009) ("[W]hen interpreting a contract, we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result.")

---

[3] The scope of Subsection B.1.b is not at issue.

(cleaned up). Viewing Section B.1 as a whole suggest that "Time Element Coverage" under Subsection B.1.f is limited by Subsection B.1.a, which requires that the covered "virus" be caused by either a "specified cause of loss" or equipment breakdown. Subsection B.1.a establishes that prerequisite for "[t]he coverage described in" Subsection B.1.b. Subsections B.1.c, B.1.d, and B.1.e all explicitly concern the coverage provided within Section B.1. So it is difficult to understand why Subsection B.1.f would be included within Section B.1 if it were unrelated to the theme of the section: The Policy covers damage resulting from a virus only when the virus is caused by "specified cause of loss" or equipment breakdown.

Subsection B.1.f.(1) makes perfect sense if it clarifies how Time Element Coverage interacts with the restrictions found in Subsection B.1.a. "If *the* loss" (the loss mentioned previously in Subsection B.1.a) "*which resulted in . . . virus*" (as Subsection B.1.a requires) "does not itself necessitate a suspension of 'operations', but such suspension is necessary *due to loss or damage to property caused by . . . virus*" (the subject of Subsection B.1.b), "then our payment under the Time Element Coverage is limited to the amount of loss and expense sustained in period of not more than 30 days . . . ."

*Cosmetic Laser, Inc.*, No. 3:20-cv-00638-SRU, ECF. No. 59 at 20–21 (footnotes omitted).[4]

Plaintiff makes no argument or claim that the COVID-19 virus was caused by a "specified cause of loss" or by equipment breakdown. Accordingly, this Court agrees with Judge Underhill that Section B.1.f does not provide coverage for thirty days of losses occasioned by the COVID-19 virus. *See also, Colgan v. Sentinel Ins. Co., Ltd.*, No. 20-cv-04780-HGS, 2021 WL 472964, at *1089 (N.D. Cal. Jan. 26, 2021) (Subsection B.1.f "does not provide standalone coverage, but instead is triggered when the other requirements of the Limited Virus provision are met."); *J&H Lanmark, Inc. v. Twin City Fire Ins. Co.*, 5:20-333-DCR, 2021 WL 922057, at *4 (E.D. Ky Mar. 10, 2021) (Section B1.f requires a "loss which resulted in . . . virus," and "[t]he only loss resulting in virus contemplated by the Policy is that under Section B.1.a. of the Virus Endorsement, which

---

[4] By way of illustration, Judge Underhill continued: "For example, suppose a sinkhole collapse (a specified cause of loss) resulted in damage to the structure of a business. Fungi and rot spread as a result. Section B.1 provides coverage for direct physical loss or physical damage flowing from the fungi and rot because Subsection B.1.a is satisfied. And if the sinkhole collapse did not itself cause the business to suspend its operations, but the fungi and rot did, Subsection B.1.f provides up to 30 days of coverage." *Id.* at 21–22.

requires the virus to have been caused by a specified cause of loss other than fire or lightning or equipment breakdown.").

Accordingly, the Court concludes that the Policy does not provide limited Time Element Coverage notwithstanding the applicability of the Virus Exclusion to Plaintiff's claimed losses.

The Clerk of the Court is directed to enter judgment for Defendant and to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 9th day of November 2021.

                                      */s/ Kari A. Dooley*
                                      KARI A. DOOLEY
                                      UNITED STATES DISTRICT JUDGE